IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| JAMES BURLINGHAUS, | ) | CASE NO.1:19-CV-02713 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**Introduction**

Before me[1] is an action by James Burlinghaus under 42 U.S.C. §402(g) seeking judicial review of the 2018 decision of the Commissioner of Social Security that denied Burlinghaus's 2016 application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Pursuant to my

---

[1] The parties have consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge Solomon Oliver, Jr. ECF No. 12.
[2] ECF No. 1.
[3] ECF No. 8.
[4] ECF No. 9.

1

initial[5] and procedural[6] orders, the parties have filed briefs,[7] along with supporting charts[8] and fact sheets.[9] They have met and conferred with the objective of narrowing and/or clarifying the issues[10] and have participated in a telephonic oral argument.[11]

For the reasons that follow, the decision of the Commissioner will be reversed and the matter remanded.

## Facts

### The ALJ's Decision

Burlinghaus was born in November 1962 and was 55 years old at the time of the hearing.[12] He is a high school graduate with past work experience as a carpenter.[13]

He was found to have the following severe impairments:

> Mild degenerative joint disease of the lumbar spine, mild osteoarthritis of the right hand, mild to moderate degenerative osteoarthritis of the left hand, Raynaud's syndrome, mild acromioclavicular and glenohumeral arthropathy in the right shoulder, chronic obstructive pulmonary disease, and hyperlipidemia.[14]

---

[5] ECF No. 5.
[6] ECF No. 11.
[7] ECF Nos. 16 (Burlinghaus), 19 (Commissioner).
[8] ECF No. 16, Attachment (Burlinghaus), 19, Attachment (Commissioner).
[9] ECF No. 15 (Burlinghaus).
[10] ECF No. 20.
[11] ECF No. 22.
[12] Tr. at 39.
[13] *Id.* at 42.
[14] *Id.* at 17.

2

The ALJ then concluded that Burlinghaus did not have an impairment or combination of impairments that met or equaled a listing.[15] The ALJ found that Burlinghaus had the residual functional capacity (RFC) for medium work, with the following restrictions:

> He can frequently operate right hand controls, he can frequently reach overhead with the right, he can frequently reach in all other directions with the right, he can frequently handle with the right and the left, he can frequently finger with the right and the left, he can frequently climb ramps and stairs, he can occasionally climb ladders, ropes or scaffolds, he can frequently balance, stoop, kneel, crouch and crawl, he can occasionally be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle, and he can frequently be exposed to humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold and extreme heat.[16]

The ALJ then discussed the 2017 consultative physical examination,[17] the examinations of August 2018, plus x-rays of the chest and thumb,[18] and the two examinations of September 2018.[19] The ALJ then gave no weight to the opinions of the state agency reviewers, citing that the functional limitations were not supported by the consultative examination that showed normal muscle tone and strength, normal gait and range of motion, as well as only mild degenerative disc disease and normal musculoskeletal range of motion.[20] Moreover, the ALJ stated that the limitations in these opinion "are unsupported by the claimant's sporadic and conservative treatment."[21]

---

[15] *Id*. at 20.
[16] *Id*. at 21.
[17] *Id*. at 23.
[18] *Id.* at 23-24.
[19] *Id*. at 24.
[20] *Id*. at 26.
[21] *Id.*

3

The ALJ then addressed the opinion from Dr. Saghafi, the 2017 consultative examiner. The ALJ again gave this opinion no weight, asserting, as before, that it "is unsupported by the claimant's sporadic and conservative treatment."[22]

Next, after determining that Burlighaus could not perform his past relevant work as a carpenter,[23] the ALJ, with the testimony of a vocational expert (VE), found that a person with Burlinghaus's age, education, work experience and RFC could perform the jobs of dishwasher, janitor and cleaner, and these jobs are available in significant numbers in the national economy.[24] Then, the ALJ found Burlighaus not disabled.[25]

Burlinghaus's Position

Burlinghaus raises two issues:

> 1. The ALJ committed reversible error when he made a residual functional capacity finding in conflict with all the medical opinions of record.[26]
> 2. The ALJ's assessment of Burlinghaus's manipulative abilities is not supported by substantial evidence which requires a remand for further review.[27]

The Commissioner's Position

---

[22] *Id.*
[23] *Id.* at 27.
[24] *Id.* at 28.
[25] *Id.*
[26] ECF No. 16 at 8-11.
[27] *Id.* at 11-14.

The Commissioner argues that the ALJ reviewed "sparse" treatment notes and then provided a thorough explanation for his findings.[28] He further argues that the ALJ properly considered that Burlinghaus had only conservative treatment, was not compliant with his treatment, and "disliked" doctors.[29] He also maintains that the ALJ gave good reasons, including the sporadic nature of treatment, for giving no weight to any functional opinion.[30]

The Commissioner further asserts that, rather than "playing doctor," the ALJ analyzed the four examinations plus imaging that occurred after the opinions were submitted and, acting within the zone of choice, arrived at the RFC.[31]

**Analysis**

This case presents the situation of:

]\'

(1) a claimant who didn't begin treatment until three years after the alleged onset date;[32]

(2) the ALJ assigning no weight to the only physical functional opinions in the record, those of two reviewing and one consulting physician;[33] and

---

[28] ECF No. 19 at 1.
[29] *Id*. at 5.
[30] *Id*. at 6-7.
[31] *Id*. at 11-12.
[32] Tr. at 22, 42.
[33] *Id*. at 26.

5

(3) the ALJ fashioning an RFC from only four treatment notes plus imaging that were produced during a period of just two months in August and September of 2018 after the claimant finally saw a physician on the advice of his disability attorney.[34]

With these facts, Burlinghaus now contends that the ALJ erred when he fashioned an RFC in conflict with the only functional opinions[35] and further erred by finding, upon the ALJ's own interpretation of the clinical data, that Burlinghaus can frequently use his upper extremities for operating hand controls, reaching, handling and fingering.[36]

He claims, as to the first argument, that the ALJ erred by grounding his rejection of the functional opinions, in part, in a belief that these opinions were not consistent with the "sporadic" and "conservative" course of treatment.[37] Burlinghaus contends that the reason he had so little treatment was that he could not afford more and that he should not be penalized for his poverty.[38] Further, as to the second issue related to the ALJ's use of raw data to fashion functional limitations, Burlinghaus asserts that the treatment notes from 2018, none of which were seen by doctors who gave opinions, all describe problems with arthritis and with shoulder and joint pain.[39] He argues that a remand is needed for a functional evaluation of this data.[40]

---

[34] *Id.* at 43.
[35] ECF No. 16 at 8-10.
[36] *Id.* at 11-14.
[37] *Id.* at 10.
[38] *Id.* at 10-11.
[39] *Id.* at 13.
[40] *Id.*

This last point is decisive. As I noted in *Kizys v. Commissioner*,[41] which was recently applied by Magistrate Judge Parker in *Falkosky v. Commissioner*,[42] when none of the treatment notes discussed functional abilities, but only recorded diagnoses or symptoms, the ALJ may, without a medical opinion, make a common sense functional assessment if there are no severe impairments.[43] But, here (and in *Falkosky)*, there are severe impairments and yet the ALJ, with no functional opinion, then "inferred from his limited treatment record that [the claimant] was able to perform work" at a given exertional level.[44] As is stated in *Falkosky*, such a finding could only have been based on the ALJ's own functional interpretation of the raw clinical data rather than upon substantial evidence.[45] Accordingly, because the ALJ failed to follow the proper standard in fashioning the RFC, the matter must be remanded.[46]

Moreover, *Falkosky* also notes that it is likely error to downgrade the weight assigned to a functional opinion simply because the claimant pursued conservative treatment. "A physician may have the expertise to opine that [a claimant'] decision to pursue conservative treatment is indicative of [his not being disabled,] [b]ut the ALJ did not have such expertise."[47]

---

[41] 2011 WL 5024866 (N.D. Ohio Mar. 27, 2013).
[42] 2020 WL 5423967 (N.D. Ohio Sept.10, 2020).
[43] *Id.* at *5 (citation omitted).
[44] *Id.* at *8.
[45] *Id.*
[46] *Id.* at *9.
[47] *Id.* at *7.

## Conclusion

Therefore, for the reason stated, the decision of the Commissioner is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 31, 2021                                s/William H. Baughman Jr.
                                                     United States Magistrate Judge